IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CHOI and 165 GREGORY ROAD ASSOCIATES, LLC, individually and derivatively on behalf of 37 PARSONS CAPITAL ADVISORS LLC and MY CAPITAL INVESTMENT LLC, | Civil Action No.: 1:19-cv-3875 <br><br> COMPLAINT AND DERIVATIVE CLAIMS |
| Plaintiffs, | |
| -against- | |
| 37 PARSONS REALTY LLC, ANTONIO WONG a/k/a ANTONIO WONG, JR., WONG REAL ESTATE CONSULTANCY LLC a/k/a WRE CONSULTANCY, YAN S. FOK, MING YI CHEUNG, JAY LAU, LAU & ASSOCIATES P.C., JOHN and JANE DOES 1-50, and ABC ENTITIES 1-50, | |
| Defendants. | |

Plaintiffs JAMES CHOI and 165 GREGORY ROAD ASSOCIATES, LLC, individually and derivatively on behalf of 37 PARSONS CAPITAL ADVISORS LLC and MY CAPITAL INVESTMENT LLC, by and through their attorneys Cohen, LaBarbera & Landrigan, LLP, make their complaint and allege as follows:

## JURISDICTION AND VENUE

1. This is a civil action arising under certain provisions of federal law, including without limitation the Racketeer Influenced and Corrupt Organizations Act, and because this action arises under the laws of the United States, this Court has original subject matter jurisdiction under such provisions of law as include without limitation 28 U.S.C. §1331 and supplemental jurisdiction over any and all state law claims forming part of the same case and controversy under such provisions of law as include without limitation 28 U.S.C. §1367.

2. This Court has personal jurisdiction over all Defendants because all or some Defendants are domiciled in the State of New York, all Defendants transact business within the State of New York, and all Defendants have sufficient minimum contacts with the State of New York.

3. Venue lies in the Eastern District of New York pursuant to 28 U.S.C. §1391 because all Defendants are located in the Eastern District of New York, a substantial part of the events or omissions giving rise to this action occurred in the Eastern District of New York, and this action involves a dispute over the rights, title, and interest to a parcel of real property located in the Eastern District of New York.

## THE PARTIES

4. Plaintiff James Choi (hereinafter "Choi") is a natural person of full age residing within the State of New York.

5. Plaintiff 165 Gregory Road Associates LLC (hereinafter "165 GRA") is a limited liability company organized under the laws of the State of New York, having an address of 40 Matthews Street, Suite 203, Goshen, New York 10924. At all relevant times, Plaintiff Choi (whether individually and/or as trustee of a trust) is or was the member of Plaintiff 165 GRA.

6. Plaintiff 37 Parsons Capital Advisors LLC, (hereinafter "37 PCA") a limited liability company organized under the laws of the State of New York and having an address of 136-20 38th Avenue, 3A-106, Flushing, New York, 11354, brings suit derivatively by its member 165 GRA.

7.   Plaintiff My Capital Investment LLC, (hereinafter "MCI") a limited liability company organized under the laws of the State of New Jersey, having an address of 7483 SW 24 St. Ste.101, Miami, Florida 33155, brings suit derivatively by its member 37 PCA.

8.   Defendant 37 Parsons Realty LLC (hereinafter "37 PR") is a limited liability company organized under the laws of the State of New York, having an address of 157-05 Cross Island Parkway, Whitestone, New York, 11357.

9.   Defendant Antonio Wong a/k/a Antonio Wong, Jr. (hereinafter "Wong") is a natural person of full age having a last known address of 3544 28th St., 4C, Astoria, New York 11106.

10.  Defendant Wong Real Estate Consultancy LLC a/k/a WRE Consultancy, LLC (hereinafter "WRE") is a limited liability company organized under the laws of the State of New York, having an address of 42-11 Kissena Blvd., Flushing, New York 11355.

11.  Defendant Yan S. Fok (hereinafter "Fok") is a natural person of full age having a last known address of 141-05 Holly Ave., Flushing, New York 11355.

12.  Defendant Ming Yi Cheung (hereinafter "Cheung") is a natural person of full age having a last known address of 6004 84th St., Middle Village, New York 11379.

13.  Defendant Jay Lau (hereinafter "Lau") is a natural person of full age having a last known address of 134 Rockaway Avenue, Garden City, New York, 11530.

14.   Defendant Lau & Associates P.C. (hereinafter "L&A") is a professional corporation organized under the laws of the State of New York, having an address of 133-47 Sanford Avenue, Unit C1E, Flushing, New York, 11355.

15.  Defendants John and Jane Does 1-50 are natural persons to be identified hereafter and against whom Plaintiffs reserve all rights to assert such claims as they deem advisable upon further investigation and discovery.

3

16. Defendants ABC Entities 1-50 are legal persons to be identified hereafter and against whom Plaintiffs reserve all rights to assert such claims as they deem advisable upon further investigation and discovery.

## FACTUAL BACKGROUND

***The Defendants present a purported business opportunity to Plaintiffs Choi and 165 GRA:***

17. Choi is the sole member of 165 GRA.

18. At a time shortly before the events alleged in this Complaint, Choi made the acquaintance of Defendant Wong.

19. For the relevant periods described in this Complaint, Wong was acting as the agent of his co-Defendants and assisted them in wrongfully obtaining Plaintiffs' property as part of an enterprise existing for the purpose of committing such racketeering and fraudulent actions against numerous victims, including but not limited to the Plaintiffs, as described herein and in the sworn statements made by others of the Defendants' victims.

20. Wong represented to Choi that he and his associates were real estate developers and investors.

21. Wong offered Choi that he join them in a new investment opportunity in real property (hereinafter the "Project".)

22. The Project included the purchase of a property located at and commonly known as 37-05 Parsons Boulevard, Flushing, New York in the County of Queens (hereinafter the "Property.")

23. Wong presented to Choi an "Acquisition and Development Plan," a true and accurate copy of which is annexed hereto and made part hereof as EXHIBIT A, regarding the Property.

24. The Acquisition and Development Plan stated, *inter alia*, as follows:

a.   That the Project would require a total investment of $13,000,000.00;

b.   That the Property could be "flipped" to a developer after one year at a potential profit of $10,000,000.00;

c.   That in the alternative the Property could be developed into a new condominium in three years at a potential profit of $36,800,000.00;

d.   That Defendants projections were reasonable based on comparable properties and projects;

e.   That the seller of the Property was presently in contract to sell the Property for $10,000,000.00;

f.   That Defendants had an opportunity to purchase the controlling interest, specifically 99.99% of the membership interests thereto, in MCI, the entity which had a contract to purchase the Property, for $3,000,000.00;

g.   That Wong had secured a bridge financing commitment for up to $8,000,000.00 for the purchase of the Property;

h.   That the Defendants had $1,000,000.00 in cash on hand; and

i.   That Wong proposed to raise the remaining $4,000,000.00 needed by accepting investments in $500,000.00 shares.

25.   A true and accurate copy of the purported contract dated August 27, 2015 to purchase the Property from Community Homes Housing Development Fund Company, Inc. by MCI as provided by Defendants to Plaintiffs (hereinafter the "Real Property Contract") is annexed hereto and made part hereof as EXHIBIT B.

26.   The terms of the Real Property Contract do not permit an assignment of the Contract.

27.  Wong provided to Plaintiff Choi an "Investment Portfolio Overview" and "Brochure" a true and accurate copy of which are annexed hereto and made part hereof as EXHIBIT C, for an entity called WRE Consultancy, LLC.

28.  Upon information and belief, WRE Consultancy, LLC is a trade name or fictitious name for Defendant Wong Real Estate Consultancy LLC. For purposes of this Complaint, WRE Consultancy, LLC and Wong Real Estate Consultancy, LLC are presumed to be one and the same and are herein referred to as "WRE."

29.  Said Investment Portfolio Overview purports to demonstrate that WRE was engaged in significant development projects (hereinafter the "Portfolio Projects") in Manhattan contemporaneously to The Defendants' proposal of the Project to Choi.

30.  The Portfolio Projects include the following properties: 88 Leonard Street, New York, New York; 305 West End Avenue, New York, New York; 10 West 65th Street, New York, New York; 265-7 Broadway, New York, New York; 540-550 West 38th Street, New York, New York; 799 Broadway, New York, New York; 1800 Park Avenue, New York, New York; and 37 Union Square West, New York, New York.

31.  True and accurate copies of contemporaneous news publications which name the true participants in the Portfolio Projects and contradict numerous representations within the Investment Portfolio Overview are annexed hereto and made part hereof as EXHIBIT D.

32.  Upon information and belief, none of the Defendants ever materially participated in any portion or filled any role in the development of the Portfolio Projects.

33.  The Investment Portfolio Overview contained false and misleading statements or implications intended to give Choi the false belief or impression that the Defendants were legitimate real estate development businesses and businessmen.

34. The Investment Portfolio Overview contained false and misleading statements or implications intended to give Choi the false belief or impression that the Defendants were more sophisticated parties than was true.

35. The Investment Portfolio Overview contained false and misleading statements or implications intended to give Choi the false belief or impression that the Defendants were more reputable than was true.

36. The Investment Portfolio Overview contained false and misleading statements or implications intended to give Choi the false impression that Choi could trust the Defendants with his investment.

37. In addition or in the alternative, the Investment Portfolio Overview intentionally overstates the involvement of Defendants in the Portfolio Projects with the purpose of causing Choi and/or others to believe that Defendants were more experienced, sophisticated, trustworthy, and well-funded than was true.

38. The Investment Portfolio Overview caused Plaintiffs to believe that said Defendants were legitimate and more reputable, more trustworthy, more sophisticated, and more suitable for investment than was the truth.

39. Plaintiffs were reasonable in arriving at such belief due to the extensive, deliberate lengths by said Defendants to lead Plaintiffs to such beliefs as recited above.

***Plaintiffs Choi and 165 GRA enter what they believe to be a business relationship with Defendants:***

40. Because of Defendants' persuasive sales pitch and false statements, Plaintiff Choi chose to invest $500,000.00 in the Project through Plaintiff 165 GRA.

41. Plaintiff Choi's investment was structured as a $500,000.00 capital contribution by Plaintiff 165 GRA, as a member, to 37 PCA.

42. A true and accurate copy of the "Initial Contributions of the Members" of 37 PCA as provided to Plaintiffs by Defendants is annexed hereto and made part hereof as EXHIBIT E.

43. The Initial Contributions of the Members states that Plaintiff 165 GRA is a member of 37 PCA.

44. The Initial Contributions of the Members states that Defendants WRE, Fok, and Cheung, as well as Manhai Wong, Zheng Wang, Yang Fan, Shi Meng Huang, YPA Management Holdings, LLC, and Jimmy Li also made capital contributions to of $500,000.00 each into 37 PCA.

45. 37 PCA was organized under the laws of the State of New York on or about October 25, 2015.

46. The address for process for 37 PCA provided to the Department of State is Wong Real Estate Consultancy, LLC, 136-20 38th Avenue, 3A-106, Flushing, New York 11354.

47. 37 PCA then purportedly purchased 99.99 percent of the membership interests of MCI for $3,000,000.00.

48. A true and accurate copy of the Membership Interest Purchase Agreement dated "November ___, 2015" to purportedly purchase the 99.99 percent of the membership interests of MCI as provided by Defendants to Plaintiffs is annexed hereto and made part hereof as EXHIBIT F.[1]

---

[1] Plaintiffs are not in possession of the fully countersigned copies of certain exhibits hereto because Defendants refused to provide them to Plaintiffs, including documents signed by one or more of the Plaintiffs and to which Plaintiffs were entitled under the law, but upon information and belief, all such exhibits were either fully countersigned and/or confirmed by the course of conduct of the Defendants.

49.   Defendants advised Plaintiffs that the $3,000,000.00 purchase of 99.99 percent of the membership interest was paid as consideration for 37 PCA's obtaining the value of the Real Property Contract held by MCI.

50.   Defendants advised Plaintiffs that purchasing 99.99% of the membership interest in MCI was necessary because 37 PCA's Real Property Contract was not assignable.

51.   Plaintiffs sent their $500,000.00 capital contribution to 37 PCA by sending such funds to Defendants Lau and L&A to be held in escrow until such funds were to be used to pay the sellers of the Property the remaining balance owed them at the closing.

52.   A true and accurate copy of the bank wire instructions emailed from an employee of Lau and L&A providing to Plaintiffs to send said funds is annexed hereto and made part hereof as EXHIBIT G.

53.   Thereafter, the Defendants ceased all communications with Plaintiffs.

54.   Based upon the Defendants' series of misrepresentations, Plaintiff Choi was left believing that he, through Plaintiff 165 GRA, was a member of 37 PCA, which in turn owned 99.99 percent of MCI, which in turn owned the Property, purchased for $10,000,000.00 and being held for investment, with anticipated profits to be realized after a few years.

55.   Notwithstanding Defendant Lau's duties to Plaintiffs as attorney and escrow agent, the Defendants Lau and L&A released Plaintiffs' funds to the Defendants without authority.

56.   Notwithstanding the representations of the Defendants, they used Plaintiffs' funds to purchase the Property in the name of their own entity for their own use and gain and to the Plaintiffs' injury.

57. Notwithstanding the provisions of the agreements entered between Plaintiffs and Defendants, the Defendants used Plaintiffs' funds to purchase the Property in the name of their own entity for their own use and gain and to the Plaintiffs' injury.

*Plaintiffs discover Defendants fraud and other breaches of duties and obligations:*

58. After Plaintiff Choi had not heard from Defendants for some time, be began to become concerned that Defendants were not dealing honestly with him.

59. Accordingly, counsel for Choi sent repeated emails to Defendants Lau and L&A seeking information regarding the status of the Project and copies of documents confirming the status of the Project.

60. In response to Choi's inquiries, Defendants Lau and L&A knowingly and intentionally misrepresented the status of the Project to Choi and deliberately concealed the true status of the Project.

61. Eventually, counsel for Choi searched the public record for any records of a conveyance of the Property to confirm whether or not the Defendants had purchased the Property as planned under the Project.

62. Counsel for Choi then discovered that the Property had been purchased but not by MCI.

63. As agreed by the parties, MCI, which was owned by Plaintiff 37 PCA, was to purchase the Property.

64. Instead, Defendant 37 PR purchased the Property. A true and accurate copy of the Deed transferring the property from the seller to 37 PR is annexed hereto and made part hereof as EXHIBIT H.

65. The operating agreement of 37 PR, a true and accurate copy of which is annexed hereto and made part hereof as EXHIBIT I, was sent to Plaintiff's counsel, presumably in error, by Defendants Lau and L&A.

66. Pursuant to the operating agreement of 37 PR, the members of that entity are Kevin Zhang, Man Chung Wong, Henry Yau, and the Defendants Fok and Cheung.

67. All or some of the members of 37 PR, including without limitation Fok and Cheung, are or were members of Plaintiff 37 PCA.

68. Those Defendants who were or are members of both 37 PR and 37 PCA owed the Plaintiffs the fiduciary duties of loyalty and care.

69. Notwithstanding those fiduciary duties of loyalty and care, those Defendants who were or are members of both 37 PR and 37 PCA breached those duties by contriving to cut Plaintiffs out of the deal that Plaintiffs had not only agreed and entered into a partnership to purchase together but even used the funds Plaintiffs provided to purchase the Property.

*Defendants' other victims:*

70. In addition to the unlawful acts by Defendants against Plaintiffs, including but not limited to those alleged in the instant Complaint, the Defendants have practiced other and similar unlawful acts against other persons and parties, hereinafter referred to as the "Other Aggrieved Parties")[2], including but not limited to the following.

71. According to a verified complaint by Great Wall Realty Corp., Defendant Wong and others committed fraud by, *inter alia*, obtaining loans secured by properties not owned by Defendant Wong by fraudulently prepared documents. True and accurate copies of the

---

[2] Nothing alleged or incorporated herein shall be construed as an admission by Plaintiffs regarding any priority of claim by any Other Aggrieved Party to any money or property, including without limitation the Property.

verified complaint and verified third-party complaint are annexed hereto and made part hereof as EXHIBIT J. Said action resulted in Defendant Wong giving a Confession of Judgment for the sum of $5,000,000.00 dollars. A true and accurate copy of Wong's Affidavit of Confession of Judgment and Judgment by Confession is annexed hereto and made part hereof as EXHIBIT K, the provisions of which are hereby incorporated by reference.

72. According to a verified complaint, Defendants Wong, WRE, and others, including Wong's associate Jimmy Li, committed fraud, deceptive trade practices, and other tortious and unlawful acts against Xiao Dong Chen and Yan Jie Huang, including but not limited to holding themselves out to be real estate investors, taking Chen and Huang's money on the pretext of assisting them in investing in real estate, and then unlawfully taking the plaintiffs' money and refusing to return same. The plaintiffs also allege that the defendants' attorneys unlawfully released plaintiffs' money directly to defendants without authorization. A true and accurate copy of the summons and verified complaint is annexed hereto and made part hereof as EXHIBIT L, the allegations of which are hereby incorporated by reference.

73. In two separate actions, various plaintiffs have made verified complaints that Defendants Lau and L&A and others have unlawfully released plaintiffs' money held in escrow by Defendants Lau and L&A to other parties, including without limitation Defendant Wong and his associated entities at the direction of parties who thereafter absconded with the plaintiffs' money, including without limitation Defendant Wong and his associated entities. A true and accurate copy of the summonses and verified complaints are annexed hereto and made part hereof as EXHIBITS M and N, the allegations of which are hereby

incorporated by reference. The repeated instances of Lau and L&A's losing their clients money deposited with them in escrow in instances of Defendant Wong's involvement forces Plaintiffs to conclude that Lau and L&A were materially participating in or aiding and abetting the Defendants' defrauding of Plaintiffs and the Other Aggrieved Parties.

74. According to a verified complaint, Defendants Wong and WRE and others (including Manhai Wong and a "Sissy Yan Fok," believed to be Defendant Fok), converted $1,500,000.00 as the result of a scheme to defraud the plaintiffs in that action including but not limited to by to holding themselves out to be real estate investors, taking the plaintiffs' money on the pretext of assisting them in investing in real estate, and then unlawfully taking the plaintiff's money and refusing to return same. A true and accurate copy of the verified complaint is annexed hereto and made part hereof as EXHIBIT O, the allegations of which are hereby incorporated by reference.

75. Finally, according to a verified complaint by Wing Fung Chau and Flushing Parsons 888 LLC, Defendant 37 PR accepted $500,000.00 from them as a down-payment for the purchase of the Property and subsequently disappeared. A true and accurate copy of the verified complaint is annexed hereto and made part hereof as EXHIBIT P, the allegations of which are hereby incorporated by reference.

*Alter ego:*

76. The individual Defendants (other than Defendant Lau) exercised complete domination and control over the various entities involved in their scheme, including without limitation by disregarding the provisions of the governing instruments of said entities and moving funds from capital accounts, contractual rights, and property from one entity to another for the purpose of defrauding the Plaintiffs and taking Plaintiffs' money to apply it for their own

use and gain at the expense of and injury to Plaintiffs and thereby committed a fraud and/or other wrongs against the Plaintiffs and thus abused the privilege of doing business in the corporate form.

77.   The Defendant Lau exercised complete domination and control over the Defendant L&A, including without limitation by wrongfully releasing and/or taking escrow funds held by L&A, notwithstanding the legal obligations of L&A to hold such funds in an attorney trust account, and thereby took Plaintiffs' money to apply it for his and/or his co-Defendants' own use and gain at the expense of and injury to Plaintiffs and thereby committed a fraud and/or other wrongs against the Plaintiffs and thus abused the privilege of doing business in the corporate form.

78.   Accordingly, the entities used by Defendants were mere alter egos of the individual Defendants, and their corporate forms should be disregarded in assigning liability to the individual Defendants.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(18 U.S.C. § 1961 *et seq*.**
**Racketeer Influenced and Corrupt Organizations Act as to All Defendants)**

79.   Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

*Factual allegations common to all RICO Counts:*

80.   Upon information and belief, for all relevant periods, Defendant Wong was acting as the agent of each and all his co-Defendants and as the "front man" of their association as part of an enterprise existing for the purpose of committing such racketeering and fraudulent actions against numerous victims, including but not limited to the Plaintiffs, as described herein and in the sworn statements made by others of such Defendants' victims.

81. Defendants' RICO violations affected interstate commerce and were effected by the use of the mails, wires, and/or other instrumentalities of interstate commerce.

***Plaintiffs' Standing Under RICO:***

82. Plaintiffs are persons within the meaning of 18 U.S.C. §§1961(3) and 1962.

83. Plaintiffs have sustained an injury to their business or property by the conduct constituting Defendants' RICO violations as alleged and demonstrated throughout this Complaint.

84. The Defendants' RICO violation did in fact cause Plaintiffs' injuries as the direct, intended result of the Defendants' scheme to defraud the Plaintiffs as alleged and demonstrated throughout this Complaint.

85. The Defendants' RICO violation proximately caused Plaintiffs' injuries as the direct, intended result of the Defendants' scheme to defraud the Plaintiffs as alleged and demonstrated throughout this Complaint.

***Culpable Persons:***

86. Defendant Wong as natural person is a person within the meaning of 18 U.S.C. §1961(3).

87. Defendant WRE as a limited liability company is a person within the meaning of 18 U.S.C. §1961(3).

88. Defendant 37 PR as a limited liability company is a person within the meaning of 18 U.S.C. §1961(3).

89. Defendant L&A as a professional corporation is a person within the meaning of 18 U.S.C. §1961(3).

90. Defendant Lau as natural person is a person within the meaning of 18 U.S.C. §1961(3).

91. Defendant Fok as natural person is a person within the meaning of 18 U.S.C. §1961(3).

92. Defendant Cheung as natural person is a person within the meaning of 18 U.S.C. §1961(3).

*Scienter:*

93. The Defendants intended to obtain Plaintiffs' property by means of materially false or fraudulent pretenses or representations.

94. The Defendants' intent is evidenced by such examples as include without limitation Wong's preparing and presenting the Investment Portfolio Overview and other false marketing materials to Plaintiffs on behalf of himself and WRE, making the materially false representations to Plaintiffs as described above, refusing to provide documents relevant to the Project and Plaintiffs' investment, and practicing similar schemes on the Other Aggrieved Parties.

95. 37 PR intended to obtain Plaintiffs' property by means of materially false or fraudulent pretenses or representations.

96. 37 PR's intent is evidenced by such examples as include without limitation its wrongfully taking Plaintiffs' funds without permission or authority to purchase the Property and concealment of its malfeasance from Plaintiffs.

*Racketeering Activity—18 U.S.C. §1341, 18 U.S.C. §1343, and 18 U.S.C. §1344:*

97. The Defendants conspired and participated in the commission of one or more racketeering activities within the definition of 18 U.S.C. §1961(1), including without limitation mail fraud, wire fraud, and financial institution fraud.

98. Specifically, Defendants Wong and WRE, on behalf of themselves and the other Defendants, committed mail and/or wire fraud by his making false representations to Plaintiffs by means of the mails and/or electronic mails, including without limitation representations regarding the purpose and status of the Project.

99. Further, Defendants Wong and WRE, on behalf of themselves and the other Defendants, committed mail and/or wire fraud by making use of the mails and/or electronic mail to provide Plaintiffs documents, including without limitation contracts, operating agreements, due diligence packages, and other documents intended for and used to present Defendants' fraudulent scheme as a legitimate project and deceive Plaintiffs so that Defendants could obtain Plaintiffs' money by false and fraudulent pretenses, representations, and promises.

100. By way of example but without limitation, on or about November 9, 2015 at 12:19 p.m., Defendant Wong, purportedly on behalf of WRE, emailed Plaintiff Choi advising that Choi "join 37 Capital Parsons Advisors directly as part of the operating agreement . . . as an equal partner/member of the LLC." This communication through the channels and instrumentalities of interstate commerce falsely promised and misrepresented to Plaintiff that Plaintiff would become a partner in the Project and the entity to own the Property in furtherance of the Defendants' scheme to defraud Plaintiffs by taking Plaintiffs' money and use it for their own use and gain in purchasing for themselves the Property with the use of Plaintiffs' money.

101. By way of additional example but without limitation, on or about November 11, 2015 at 11:55 a.m. Defendant Wong emailed Plaintiff Choi proposing they meet at Wong's office to sign an operating agreement and attached a proposed operating agreement for Plaintiff Choi to sign. This communication through the channels and instrumentalities of interstate commerce falsely promised and misrepresented to Plaintiffs that Plaintiffs would become a partner in the Project and the entity to own the Property in furtherance of the Defendants' scheme to defraud Plaintiffs by taking Plaintiffs' money and using it for their own use and gain in purchasing for themselves the Property with the use of Plaintiffs' money.

102. Still further, Defendants Wong, WRE, Lau, and L&A, on behalf of themselves and the other Defendants, committed mail, wire, and/or financial institution fraud by using the mails, electronic mail, and/or other instrumentalities of interstate commerce to fraudulently induce the release of Plaintiffs' money from the custody of one or more financial institutions by Defendants Lau and L&A so that Defendants could obtain Plaintiffs' money by false and fraudulent pretenses, representations, and promises.

103. The Defendants then used Plaintiffs' money to enrich themselves and their enterprise by using it to purchase property in the name of 37 PR, of which Defendants Fok and Cheung are members.

104. Based on the foregoing, the Defendants devised and/or intended to devise one or more schemes or artifices to defraud Plaintiffs and others.

105. Based on the foregoing, the Defendants devised and/or intended to devise one or more schemes or artifices for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

106. Based on the foregoing, the Defendants did or could have reasonably foreseen the use of the mails in furtherance of their schemes or artifices to defraud Plaintiffs.

107. Based on the foregoing, the Defendants did in fact use the mails in furtherance of their schemes or artifices to defraud Plaintiff.

108. Based on the foregoing, the Defendants transmitted or caused to be transmitted by means of wire, radio, and/or television communication in interstate or foreign commerce, writings, signs, signals, pictures, and/or sounds for the purpose of executing such scheme or artifice.

109. Based on the foregoing, the Defendants knowingly executed or attempted to execute a scheme or artifice to obtain Plaintiffs' property under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, or promises.

**Pattern of Racketeering:**

110. The Defendants committed not less than two acts of racketeering activity, one or more of which occurred within ten years after the commission of a prior act of racketeering.

111. First, the Defendant Wong committed the predicate acts of racketeering activity as alleged in detail above.

112. Next, as reported in a sworn statement, See Exhibit J, Defendant Wong committed two acts of racketeering, in addition to the acts of racketeering he perpetrated against Plaintiffs as alleged herein, by committing financial institution fraud against Other Aggrieved Parties by falsely obtaining millions of dollars from the custody and control of financial institutions, including without limitation $1,100,000.00 from Wisdom Ventures LLC and Bloomingdale Drive Funding Co. on or about July 26, 2012 and $2,500,000.00 from Quontic Bank on or about January 9, 2013.

113. In addition, as reported in a sworn statement, See Exhibit L, Defendants Wong and WRE, and others including Jimmy Li, committed several acts of racketeering against Other Aggrieved Parties in the form of mail and/or wire fraud by, *inter alia*, mailing bad checks in furtherance of a Ponzi scheme on May 25, 2016 and August 15, 2016, emailing a loan application in furtherance of a Ponzi scheme and a promissory note in furtherance of a Ponzi scheme on February 16, 2016.

114. Still further, as reported in a sworn statement, See Exhibit O, Defendants Wong, WRE, Fok, and Manhai Wong committed several acts of racketeering against Other Aggrieved

Parties in the form of mail fraud, wire fraud and/or financial institution fraud by, *inter alia*, persuading Other Aggrieved Parties to wire $1,500,000.00 to an attorney escrow account as an investment in a purported real estate project and then subsequently inducing the attorneys to release the funds to themselves and others without authorization by the aggrieved parties and absconding with their money in a scheme beginning in September 2014 through June 2016.

115. Yet again, as reported in two sworn statements, See Exhibits M and N, Defendants Wong and WRE committed several acts of racketeering against Other Aggrieved Parties in the form of mail fraud, wire fraud and/or financial institution fraud by, *inter alia*, persuading Other Aggrieved Parties to wire $500,000.00 to an attorney escrow account as an investment in a purported real estate project and then subsequently inducing the attorneys, namely the Defendants Lau and L&A, who were either aiding and abetting the scheme or fraudulently induced by Wong, to release the funds to himself and others without authorization by the aggrieved parties and absconding with their money.

116. The Defendants' pattern of racketeering constitute a continuous and related series of acts forming a closed-ended scheme against the instant Plaintiffs, by unlawfully obtaining the Plaintiffs' monies and using it for their own gain as part of their larger, open-ended scheme to defraud a continual parade of victims of schemes similar to the one perpetrated on the instant Plaintiffs and the plaintiffs in the above-cited cases. Further, the Defendants continue to hold, invest, and otherwise make use of Plaintiffs' money as part of their ongoing enterprise and scheme and continuously harm Plaintiff as part of an ongoing enterprise.

*RICO Enterprise:*

117. The Defendants constitute a group associated in fact and involved in interstate commerce.

118. The Defendants' group functions to fulfill the purpose of, *inter alia*, deceiving innocent investors, including without limitation Plaintiffs and the Other Aggrieved Parties, into believing that they are *bona fide*, successful real estate developers; persuading said investors to wire their money for the purpose of purchasing real property to an attorney escrow account; inducing the escrow agent by fraud, or perhaps nefarious cooperation in the case of Defendant Lau and L&A, to release the escrowed money to the Defendants, whereupon they disappear and abscond with their victims' money.

119. The Defendants have various relationships among those associated with the enterprise, including without limitation that of limited liability company and member, as between 37 PR and Fok and Cheung; attorney and client, as between Lau and L&A and one or more Defendants, including Wong; and repeat coconspirators, such as Wong, Jimmy Li, and Fok. The Defendants also have various relationships specific to the racketeering enterprise they comprise. For example, Wong and Jimmy Li appear to regularly act as the "front men" who find and solicit the victims, WRE poses as the large-scale developer by offering fraudulent promotional materials to the victims, Lau facilitates the fraudulent taking of the escrowed funds, and various single-purpose entities, such as 37 PR, function as the purported investment vehicle.

120. This association in fact has gone on for years, swindling victim after victim, demonstrating a longevity sufficient to permit those associates to pursue the enterprise's purpose, as described above.

## Count One—§1962(a)

121. The Defendants as an ongoing enterprise received the income of the funds taken from Plaintiffs and other victims in acts of racketeering as described above and invested said income into real property, ostensibly owned in a partnership with their victims but in reality purchased by a different entity to the direct injury to the victims, including Plaintiffs.

122. As part of the ongoing enterprise, the Defendants use said real property for their profit, in the instant case apparently by taking a $500,000.00 down-payment from a third party for the sale of the Property and then disappearing with the money. See Exhibit P.

123. The Defendants received income in the form of Plaintiffs' money from the above-described racketeering activity.

124. The Defendants used and invested such income in the establishment or operation of an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

125. The Defendants' engagement in and effect on interstate commerce includes without limitation their use of the mails, electronic mail, and bank wires in furtherance of their racketeering activity.

126. Plaintiffs were injured by the investment of racketeering income including without limitation by the Defendants' taking Plaintiffs' money and any additional income derived therefrom and belonging to Plaintiffs and placing it in one or more real property investments beyond the reach of Plaintiff but for the intervention of this Court.

127. The Defendants accomplished the foregoing by the use of one or more racketeering activities within the meaning of 18 U.S.C. §1961(1) as described herein.

128. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5) as described herein.

129. As direct and proximate result of the Count I Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiffs have been injured in their business and property including without limitation in that they have lost their $500,000.00 delivered to Defendants, the profits promised them by Defendants, their interest in the Property, and attorneys' fees and costs.

130. Wherefore, Plaintiff requests that this Court enter judgment against the Defendants as follows: actual damages in an amount to be determined at trial but in any event not less than $1,500,000.00, treble damages, and attorney's fees.

### Count Two—§1962(b)

131. Plaintiffs were injured by the acquisition of an interest or control over an enterprise.

132. The Defendants' engagement in and effect on interstate commerce includes without limitation their use of the mails, electronic mail, and bank wires in furtherance of their racketeering activity.

133. The Defendants acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity.

134. Specifically, the Defendants took the capital investments of the Plaintiffs, obtained by Defendants' sending fraudulent documents and communications through the mails and/or electronic mail and their fraudulently inducing the releasing of funds from financial institutions, into one entity set up for that purpose and later took those funds unlawfully and used them to purchase properties in the name of one or more other entities controlled by the Defendants of which Plaintiff was not a member, and practiced variations of this

scheme upon other victims, and thereby invested the proceeds of their racketeering offenses against their victims and used said proceeds to acquire, maintain, and grow an enterprise engaged in racketeering.

135. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5) as described herein.

136. The Defendants have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

137. As direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs have been injured in their business and property including without limitation in that they have lost their $500,000.00 delivered to Defendants, the profits promised them by Defendants, their interest in the Property, and attorneys' fees and costs.

138. Wherefore, Plaintiff requests that this Court enter judgment against the Defendants as follows: actual damages in an amount to be determined at trial but in any event not less than $1,500,000.00, treble damages, and attorney's fees.

### Count Three—§1962(c)

139. The Defendants as an association in fact comprise an enterprise engaged in and whose activities affect interstate commerce, including but limited to by use of the mails, electronic mails, and bank wires to fraudulently obtain the property of other and invest their victims' property in the enterprise by accumulating real property and engaging is similar schemes.

140. The Defendants are employed by or associated with the enterprise.

141. The Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

142.  Specifically, the Defendants took the capital investments of the Plaintiffs, obtained by fraudulent documents and communications sent through the mails and/or electronic mail and fraudulently induced the releasing of funds from financial institutions, into one entity set up for that purpose and later took those funds unlawfully and used them to purchase properties in the name of other entities controlled by the Defendants of which Plaintiff was not a member, and practiced variations of this scheme upon other victims, and thereby invested the proceeds of their racketeering offenses against their victims and used said proceeds to acquire, maintain, and grow an enterprise engaged in racketeering.

143. Pursuant to and in furtherance of their fraudulent scheme, The Defendants committed multiple related acts of racketeering as described above.

144. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5) as described herein.

145. The Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c) as described above.

146. As direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property including without limitation in that they have lost their $500,000.00 delivered to Defendants, the profits promised them by Defendants, their interest in the Property, and attorneys' fees and costs.

147. Wherefore, Plaintiff requests that this Court enter judgment against the Defendants as follows: actual damages in an amount to be determined at trial but in any event not less than $1,500,000.00, treble damages, and attorney's fees.

### Count Four—§1962(d)

148. As set forth above, the Defendants agreed and conspired to violate 18 U.S.C. § 1962(a) (b) and (c). Specifically, the Defendants conspired to take the capital investments of the Plaintiffs—after obtaining same by fraudulent documents and communications sent through the mails and/or electronic mail and by fraudulently inducing the releasing of funds from financial institutions—into one entity set up for that purpose and to take those funds unlawfully and use them to purchase properties in the name of other entities controlled by the Defendants of which Plaintiff was not a member, and practice variations of this scheme upon other victims, and thereby invest the proceeds of their racketeering offenses against their victims and used said proceeds to acquire, maintain, and grow an enterprise engaged in ongoing racketeering.

149. Plaintiffs were injured by an overt predicate act of racketeering in furtherance of the conspiracy.

150. This conspiracy is evidenced by the concerted actions taken by the Defendants and was intended to and did  (1) use or invest income that was derived from a pattern of racketeering activity in an interstate enterprise (§ 1962(a)); (2) acquire or maintain interests in the enterprise through a pattern of racketeering activity (§ 1962(b)); and (3) conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity (§ 1962(c)).

151. The Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described herein.

152. The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.

153. Said conduct constitutes a conspiracy to violate 18 U.S.C.A. § 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

154. As direct and proximate result of the Count IV Defendant(s)' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property including without limitation in that they have lost their $500,000.00 delivered to Defendants, the profits promised them by Defendants, their interest in the Property, and attorneys' fees and costs.

155. Wherefore, Plaintiff requests that this Court enter judgment against the Defendants as follows: actual damages in an amount to be determined at trial but in any event not less than $1,500,000.00, treble damages, and attorney's fees.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Fraud as to All Defendants)**

156. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

157. For the relevant periods described in this Complaint, Wong was acting as the agent of his co-Defendants and assisted them in wrongfully obtaining Plaintiffs' property as part of an enterprise existing for the purpose of committing fraudulent actions against numerous

victims, including but not limited to the Plaintiffs, as described herein and in the sworn statements made by others of the Defendants' victims.

158. Defendants made a representation to Plaintiffs that they were in the business of real estate development in projects in which in reality Defendants were not involved.

159.  More specifically, Defendants made a representation to Plaintiffs that the Defendants would invest Plaintiffs' money when in reality they intended and did take Plaintiffs' money and use it for their own gain.

160. By way of example but without limitation, on or about November 9, 2015 at 12:19 p.m., Defendant Wong, purportedly on behalf of WRE, emailed Plaintiff Choi a message which falsely promised and misrepresented to Plaintiff that Plaintiff would become a partner in the Project and the entity to own the Property in furtherance of the Defendants' scheme to defraud Plaintiffs by taking Plaintiffs' money and use it for their own use and gain in purchasing for themselves the Property with the use of Plaintiffs' money.

161. The misrepresentations were material as evidenced by the fact that they effected the entire purpose of the transaction of the sale of interest in an entity intended to be and in fact ultimately drained of its capital accounts in order to purchase real property to enrich the tortfeasors.

162. The Defendants intentionally, knowingly, and willfully made the misrepresentations to Plaintiffs in order to defraud them as made evident by the elaborate ruse perpetrated on the Plaintiffs, including without limitation false marketing materials, a series of single-purpose entities, and so on.

163. Defendants' representations were untrue as evidenced by the fact that Plaintiffs' money was used to purchase the property for a subset and/or different set of investors through a different entity than the entity into which the Plaintiffs invested.

164. Defendants knew the representations were untrue and, in addition or in the alternative, made the representation in reckless disregard for the truth of the representation as made evident by the very nature of their scheme as practiced upon the Plaintiffs.

165. Defendants made the representation with the intent to deceive Plaintiffs and for the purpose of inducing Plaintiffs to act upon it.

166. The Plaintiffs relied on the misrepresentations of the Defendants.

167. Plaintiffs were reasonable in arriving at such belief due to the extensive, deliberate lengths by said Defendants to lead Plaintiffs to such beliefs as recited above.

168. Defendants 37 PR, Lau, and L&A were aware of the fraud perpetrated against Plaintiffs by their co-Defendants and provided substantial assistance in the commission of the fraud.

169. Specifically, Defendants Lau and L&A clearly knew about and substantially assisted the fraud by contriving to release Plaintiffs' funds from escrow under the false pretense that they were authorized to do so even though the funds were apparently delivered to and used by an entity in which Plaintiffs were not members to purchase the Property with an entity which did not have the contractual right to purchase the Property.

170. Defendant 37 PR clearly knew about and substantially assisted the fraud, and profited at Plaintiffs' expense as a result of the fraud, by serving as the conduit for Plaintiffs' money and by taking title to the Property to which it had no right.

171. As the direct and proximate result of the Defendants' misrepresentations, the Plaintiffs suffered damages in an amount to be determined at trial but in any event not less than $1,500,000.00.

172. Because Defendants' misrepresentations were willful, wanton, and malicious, and were made in furtherance of a pattern of fraudulent schemes upon numerous victims and in aid of a racketeering organization, Plaintiffs are entitled to punitive damages.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Conversion as to All Defendants)

173. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

174. Defendants, without authority, intentionally exercised and continue to exercise control over Plaintiffs' property and thereby interfered with Plaintiffs' right of possession.

175. Defendants received possession of the Plaintiffs' property and thereafter, without authority, intentionally exercised control over it in such a manner as to interfere with Plaintiffs' right of possession.

176. Specifically, the Defendants Wong, WRE, Fok, and Cheung took Plaintiffs' money by false pretenses and kept that money to purchase the Property in the name of Defendant 37 PR for the Defendants' own enrichment with an entity in which Plaintiffs' have no ownership or other interest.

177. Defendants Lau and L&A unlawfully took Plaintiffs' money out of escrow and delivered it to their co-Defendants, who then purchased the Property through 37 PR rather than 37 PCA.

178. Defendants have thereby converted Plaintiffs' property and are accordingly liable, *inter alia*, for its value.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty as to Defendants WRE, Fok, Cheung, Lau, and L&A)

179. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

180. As co-members with Plaintiff 165 GRA, WRE, Fok, Cheung, Manhai Wong, Zheng Wang, Yang Fan, Shi Meng Huang, YPA Management Holdings, LLC, and Jimmy Li owed Plaintiff 165 GRA the fiduciary duties of loyalty and care.

181. Further, as escrow agents holding Plaintiffs' money and as their purported attorneys, Defendants Lau and L&A owed Plaintiffs the fiduciary duties of loyalty and care.

182. Defendants' fiduciary duties required that Defendants act in good faith and fair dealing with Plaintiffs and act in Plaintiffs' best interests.

183. Defendants WRE, Fok, Cheung, and possibly others breached their fiduciary duties to Plaintiffs by engaging in a conspiracy to defraud Plaintiffs and by actively defrauding them as described above.

184. Defendants Fok, Cheung, and possibly others, breached their fiduciary duties to Plaintiffs by unlawfully taking the business opportunity of 37 PCA to buy the Property.

185. Defendants Fok, Cheung, and possibly others, breached their fiduciary duties to Plaintiffs by unlawfully taking the Plaintiffs' capital contributions to 37 PCA and using those funds to purchase the Property through a new entity, 37 Parsons Realty, LLC, for themselves and others.

186. Defendants Lau and L&A breached their fiduciary duties to Plaintiffs by either negligently, recklessly, or intentionally releasing Plaintiffs' funds out of escrow to be unlawfully be put to use by the other Defendants for their personal gain.

187. Based on the foregoing, the Defendants failed to act in good faith and fair dealing with Plaintiffs and to act in Plaintiffs' best interests.

31

188. Further, the Defendants were required to make truthful and complete disclosures to Plaintiffs but did not; rather, the Defendants conspired to and did defraud the Plaintiffs as described above.

189. Defendant's breach was a substantial factor in causing Plaintiffs to sustain damages. As the direct and foreseeable result of Defendant's breach, Plaintiffs sustained damages in an amount to be determined at trial but in any event not less than $1,500,000.00.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Accounting as to Defendants WRE, Lau, and L&A)**

190. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

191. WRE is the manager of 37 PCA.

192. Plaintiff 165 GRA is a member of 37 PCA.

193. Under the terms of the operating agreement and/or the New York Limited Liability Company Act, Plaintiff 165 GRA is entitled to examine the books and records of 37 PCA.

194. Under New York common law, Plaintiff 165 GRA is entitled to an accounting for 37 PCA.

195. Plaintiff 165 GRA demanded that WRE provide an opportunity to examine the books and records of 37 PCA.

196. Plaintiff 165 GRA demanded that WRE provide an accounting for 37 PCA.

197. WRE refused to provide 165 GRA an opportunity to examine the books and records of 37 PCA.

198. WRE refused to provide an accounting for 37 PCA.

199. Accordingly, 165 GRA is entitled to a court-mandated examination of the books and records of 37 PCA and an accounting by the manager WRE.

200. There was one or more fiduciary relationships and/or relationships of agency and confidence between Plaintiffs and Defendants Lau and L&A, including without limitation the relationships of Defendants Lau and L&A attorneys and escrow agents for Plaintiffs.

201. Under New York common law, Plaintiffs are entitled to an accounting by Defendants Lau and L&A for the money Plaintiffs delivered to Defendants Lau and L&A which has since disappeared.

202. Plaintiffs demanded that Defendants Lau and L&A provide an accounting for said money.

203. Defendants Lau and L&A refused to provide any accounting to Plaintiffs.

204. Accordingly, Plaintiffs are entitled to a court-mandated accounting by Defendants Lau and L&A.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Contract as to Defendants Wong, WRE, Fok, Cheung, Lau, and L&A)

205. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

206. Plaintiffs entered one or more valid, binding and enforceable contracts with the Defendants Wong, WRE, Fok, Cheung, and others for the investment of $500,000.00 into a venture to buy the Property for the consideration of a share in the ownership and profit of purchasing, developing, and/or reselling the Property.

207. Said contract or contracts required that Plaintiffs provide $500,000.00 and that Defendants would invest the money in the Property and develop and/or sell the property for the benefit of both Plaintiffs and Defendants.

208. The Defendants promised a return to Plaintiffs of an estimated profit of $1,000,000.00.

209. Plaintiffs entered one or more valid, binding and enforceable contracts with the Defendants Lau and L&A that Lau and L&A would hold Plaintiffs' funds in escrow and release said

funds only for the purchase of the Property by an entity in which Plaintiffs' had an ownership or other interest.

210. Plaintiffs fulfilled all material obligations under the contracts.

211. Defendants materially breached the contracts by taking Plaintiff's money and using it to purchase the Property with a different entity in which Plaintiffs had no ownership interest.

212. Plaintiffs sustained damages as the direct and foreseeable result of Defendant's breach in an amount to be determined at trial but in any event not less than $1,500,000.00.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Unjust Enrichment Defendants 37 PR, Wong, WRE, Fok, and Cheung)

213. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

214. Defendants have obtained $500,000.00 from Plaintiffs and took that money for their own use rather than purchase the Property for the entity in which Plaintiff 165 GRA holds an ownership interest.

215. Due to the Defendants obtaining Plaintiffs' money by fraud and using it to their own enrichment, in fairness and good conscience, the money should not be retained.

216. The law requires that Defendants to repay Plaintiffs.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Constructive Trust as to Defendants Wong, WRE, Fok, Cheung, Lau, and L&A)

217. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

218. As co-members of 37 PCA with Plaintiff 165 GRA, WRE, Manhai Wong, Fok, Zheng Wang, Cheung, Yang Fan, Shi Meng Huang, YPA Management Holdings, LLC, and Jimmy Li, owed Plaintiff 165 GRA the fiduciary duties of loyalty and care.

219. The Defendants promised that they were legitimate real estate developers and would use Plaintiffs' money to purchase the Property for the benefit of both Plaintiffs' and Defendants.

220. As escrow agents holding Plaintiffs' money and as their purported attorneys, Defendants Lau and L&A owed Plaintiffs the fiduciary duties of loyalty and care.

221. Defendants Lau and L&A promised Plaintiffs that they would hold Plaintiffs' funds in escrow and release said funds only for the purchase of the Property by an entity in which Plaintiffs' had an ownership or other interest.

222. In reliance on those promises, the Plaintiffs transferred $500,000.00 to the Defendants.

223. Rather than fulfill that promise, the Defendants used the money to buy the Property in the name of a different entity in which Plaintiffs owned no interest and enriched themselves unjustly at the expense of the Plaintiffs.

### AS AND FOR A NINTH CAUSE OF ACTION
**(N.Y. Gen. Bus. Law § 349 as to Defendants Wong, WRE, Fok, Cheung, Lau, and L&A)**

224. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

225. Defendants Wong, WRE, Fok, and Cheung are engaged in the business of real estate investing.

226. In addition or in the alternative, Defendants Wong, WRE, Fok, and Cheung hold themselves out to be in the business of real estate investing.

227. Defendants Lau and L&A are engaged in the business of practicing law.

228. In addition or in the alternative, Defendants Lau and L&A hold themselves out to be engaged in the business of practicing law.

229. Defendants acts as alleged above constitute deceptive acts and practices in the conduct of Defendants' business, trade and commerce within the meaning of N.Y. Gen. Bus. Law § 349.

230. Plaintiffs relied on Defendants' deception to their detriment including but not limited to as fully set forth above.

231. Defendants knowingly and/or willfully violated N.Y. Gen. Bus. Law § 349.

232. By reason of the foregoing, Plaintiffs sustained damages in an amount to be determined at trial but in any event not less than $1,500,000.00.

233. Plaintiffs are entitled to attorneys' fees and costs pursuant to N.Y. Gen. Bus. Law § 349.

234. Plaintiffs are entitled to treble damages pursuant to N.Y. Gen. Bus. Law § 349.

## JURY DEMAND

235. Plaintiffs demand trial by jury as to all issues so triable.

WHEREFORE, Plaintiffs demand judgment against the Defendants as follows:

a. Compensatory damages in an amount to be determined at trial but in any event not less than $1,500,000.00;

b. Punitive damages in an amount to be determined at trial;

c. Treble damages under the Racketeer Influenced and Corrupt Organizations Act and/or N.Y. Gen. Bus. Law § 349;

d. Attorneys' fees and costs under such provisions of law as include without limitation the Racketeer Influenced and Corrupt Organizations Act and/or N.Y. Gen. Bus. Law § 349;

e. An accounting by WRE of 37 PCA and by Lau and L&A regarding Plaintiffs' money placed in escrow with those Defendants;

    f.   An examination of the books and records of 37 PCA;

    g.   Interest; and

    h.   Such other and further relief as the Court deems just, proper, and equitable.

## **DERIVATIVE ACTIONS ON BEHALF OF 37 PCA AND MCI**

236. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

237. Based on the foregoing and below allegations, 37 PCA and MCI have suffered harm as the result of the Defendants actions and omissions.

238. At all relevant times, Plaintiff 165 GRA was and is a member of 37 PCA.

239. Plaintiff 165 GRA has the authority to bring this action on behalf of 37 PCA and/or brings this action derivatively on behalf of 37 PCA

240. At all relevant times, 37 PCA is or was the 99.99% member and controlling member of MCI.

241. Plaintiff 37 PCA has the authority to bring this action on behalf of MCI and/or brings this action derivatively on behalf of MCI**.**

*Demands made:*

242. Defendant WRE is the managing member of both 37 PCA and MCI.

243. On or about July 25, 2018, Plaintiffs sent a demand (the "Demand") to Defendant WRE, Defendant Wong as the agent of Defendant WRE, 37 PCA, and other *de jure* and/or *de facto* related parties by means of Certified Mail, Return Receipt Requested. A true and accurate copy of that demand is annexed hereto and made part hereof as EXHIBIT Q.

244. Plaintiffs twice mailed the Demand to WRE using the address of 42-11 Kissena Blvd., Flushing, New York 11355, the address provided for WRE in the operating agreement for 37 PCA.

245. Both of Plaintiffs' mailing of the Demand sent to WRE was returned, presumably because WRE or its agent refused to sign for them. Plaintiffs also twice mailed a copy of the Demand to the address of 136-20 38th Ave., Suite 3A, Flushing, New York 11354, the address provided to the New York Secretary of State for Wong Real Estate Consultancy LLC.

246. That mailing was also apparently refused twice.

247. Still further, Plaintiffs mailed the Demand to the address of 7483 SW 24 St. Ste.101, Miami, Florida 33155, the only known address for MCI. That mailing was accepted according the return receipt received; however, the only response Plaintiffs received was an email from an attorney claiming that his clients had no knowledge of the subject of the Demand.

248. The Demand was also sent to Defendants Wong and Cheung, who returned receipts, but neither they nor any other person or party to whom Plaintiffs mailed the Demand took any action or made any communication regarding the Demand to the best of Plaintiffs' knowledge.

249. The Demand was also sent to and received by other members of 37 PCA who are not presently named as defendants herein, namely Ming Yi Cheung, Shi Meng Huang, and Yang Fan, but neither they nor any other person or party to whom Plaintiffs mailed the Demand took any action or made any communication regarding the Demand to the best of Plaintiffs' knowledge.

250. The Demand was also sent to but apparently refused by Manhai Wong (twice), Defendant Fok, Zheng Wang, YPA Management Holdings LLC, and Jimmy Li as the remaining members of 37 PCA, but neither they nor any other person or party to whom Plaintiffs

mailed the Demand took any action or made any communication regarding the Demand to the best of Plaintiffs' knowledge.

251.   The Demand was also sent to and received by Jian Zhang as the only other member of MCI besides 37 PCA, but neither he nor any other person or party to whom Plaintiffs mailed the Demand took any action or made any communication regarding the Demand to the best of Plaintiffs' knowledge.

252.   A letter similar to the Demand was also sent to and received by Defendants Lau and L&A, who were or held themselves out to be attorneys for 37 PCA and/or its members, but neither they nor any other person or party to whom Plaintiffs mailed the Demand took any action or made any communication regarding the Demand to the best of Plaintiffs' knowledge.

253.   The Demand demanded that the membership and/or management of 37 PCA and MCI, *inter alia*, rectify the circumstances and damages caused by their failure to take title to the Property under 37 PCA or MCI notwithstanding their use of the Plaintiffs' money to purchase the Property and to provide an accounting or grant access to the books and records of 37 PCA and MCI.

254.   To date, the membership and/or management of neither 37 PCA nor MCI did or attempted to rectify the circumstances and damages caused by their failure to take title to the Property under 37 PCA or MCI notwithstanding their use of the Plaintiffs' money to purchase the Property or to provide an accounting or grant access to the books and records of 37 PCA or MCI.

*Demands or further demands would be futile:*

255.  Based on the foregoing, the Plaintiffs have alleged with particularity that they made an attempt to secure the initiation of the action sought by the management of 37 PCA and MCI.

256.  In addition or in the alternative, Plaintiffs are excused from the requirement to serve such a demand or to make any further attempts to serve such a demand.

257.  Defendant WRE is the managing member of both 37 PCA and MCI.

258.  Defendant WRE is also sued herein, *inter alia*, for RICO violations, fraud, conversion, and breaches of fiduciary duty in direct connection to the grounds upon which Plaintiffs would demand WRE take action.

259.  Likewise, the other members of 37 PCA and MCI are either named as Defendants herein, *inter alia*, for RICO violations, fraud, conversion, and breaches of fiduciary duty in direct connection to the grounds upon which Plaintiffs would demand action or connected to or implicated by the allegations of this Complaint.

260.  Based on the foregoing, demand would be futile because WRE is directly interested in the challenged actions and the membership of 37 PCA and MCI is too compromised or interested in the challenged actions to force the manager to take action.

261.  Specifically, the manager of 37 PCA and MCI and a subset of the membership breached their fiduciary duties and enacted a scheme to defraud Plaintiffs and perhaps others in order to enrich themselves and their associates at the expense of their victims, including without limitation by defrauding Plaintiffs Choi and 165 GRA of their $500,000.00 capital investment and using that money to obtain the Property under the title of another entity to which Plaintiffs had no membership interests.

262. Based on the foregoing, demand would be futile because WRE and the membership of 37 PCA and MCI did not fully inform themselves about the challenged actions notwithstanding diligent efforts by Plaintiffs to sound the alarm by mailing the Demand.

263. Specifically, Plaintiffs mailed the Demand to everyone they could think of related to the actions and omissions requiring redress, but the Demand was either refused, ignored, or denied.

264. Based on the foregoing, demand would be futile because the challenged actions were so egregious on their face that it could not have been the product of sound business judgment of the WRE or the controlling membership.

265. Specifically, the unlawful taking of membership capital investments, which were obtained by fraud, and purchasing a property for a subset of the members and other associates is the product of a criminal enterprise—not possibly that of sound business judgment.

266. Wherefore, each of the following causes of action are brought individually by 37 PCA and/or MCI and/or derivatively on behalf of 37 PCA and/or MCI by members thereof.

**AS AND FOR A FIRST DERIVATIVE CAUSE OF ACTION**
**(Declaratory Relief as to Defendant 37 PR)**

267. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

268. MCI had at all relevant times a contractual right to purchase the Property.

269. MCI was at all relevant times the contractual assignee of leases, rents, and/or other possessory interests to the Property.

270. MCI's contractual interests to the Property were not assignable under the terms of the contract to the entity which unlawfully took title to the Property, namely Defendant 37 PR.

271. Notwithstanding the foregoing, Defendant 37 PR unlawfully took title to and possession of the Property as the result of the above-described racketeering, breaches of fiduciary duties, fraud, deceptive trade practices, and other unlawful conduct.

272. As a result of the foregoing, there exists a present and justiciable controversy relating to the rights, title, and interests in real property, namely, the Property.

273. As a result of the foregoing, there exists a present and justiciable controversy relating to the rights, title, and interests in the ownership interests in the entity or entities involved in the corporate structure which owns or is entitled to own the Property.

**AS AND FOR A SECOND DERIVATIVE CAUSE OF ACTION**
**(Breach of Fiduciary Duty as to Defendants Wong, WRE, Fok, Cheung, Lau, and L&A)**

274. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

275. As co-members with Plaintiff 165 GRA, WRE (and as manager), Manhai Wong, Fok, Zheng Wang, Cheung, Yang Fan, Shi Meng Huang, YPA Management Holdings, LLC, and Jimmy Li, owed 37 PCA the fiduciary duties of loyalty and care.

276. Further, as escrow agents holding Plaintiffs' money and as their purported attorneys, Defendants Lau and L&A owed Plaintiffs the fiduciary duties of loyalty and care.

277. Defendants' fiduciary duties required that Defendants act in good faith and fair dealing with Plaintiffs and act in Plaintiffs' best interests.

278. Defendants Wong and WRE breached their fiduciary duties to Plaintiffs by actively defrauding them as described above.

279. Defendants Fok, Cheung, and possibly others, breached their fiduciary duties to Plaintiffs by engaging in a conspiracy to defraud Plaintiffs and by unlawfully taking the business opportunity of 37 PCA, and Defendants used that opportunity and those funds purchased the Property through a new entity, 37 PR, for themselves and others.

280. Defendants Lau and L&A breached their fiduciary duties to Plaintiffs by either negligently, recklessly, or intentionally releasing Plaintiffs' funds out of escrow to be unlawfully be put to use by the other Defendants for their personal gain.

281. Based on the foregoing, the Defendants failed to act in good faith and fair dealing with Plaintiffs and to act in Plaintiffs' best interests.

282. Further, the Defendants were required to make truthful and complete disclosures to Plaintiffs but did not; rather, the Defendants conspired to and did defraud the Plaintiffs as described above.

283. Defendants' breaches caused Plaintiffs to sustain damages. As the direct and foreseeable result of Defendant's breach, Plaintiffs sustained damages in an amount to be determined at trial.

**AS AND FOR A THIRD DERIVATIVE CAUSE OF ACTION**
**(Constructive Trust as to Defendants Wong, WRE, Fok, Cheung, Lau, and L&A)**

284. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

285. As co-members of 37 PCA with Plaintiff 165 GRA, WRE (and as manager), Manhai Wong, Fok, Zheng Wang, Cheung, Yang Fan, Shi Meng Huang, YPA Management Holdings, LLC, and Jimmy Li, owed 37 PCA the fiduciary duties of loyalty and care.

286. The Defendants promised that they were legitimate real estate developers and would use Plaintiffs' money to purchase the Property for the benefit of both Plaintiffs and Defendants.

287. As escrow agents holding Plaintiffs' money and as their purported attorneys, Defendants Lau and L&A owed Plaintiffs the fiduciary duties of loyalty and care.

288. Defendants Lau and L&A promised Plaintiffs that they would hold Plaintiffs' funds in escrow and release said funds only for the purchase of the Property by an entity in which Plaintiffs' had an ownership or other interest.

43

289. In reliance on those promises, the Plaintiffs transferred $500,000.00 to the Defendants.

290. Rather than fulfill that promise, the Defendants used the money to buy the Property in the name of a different entity in which Plaintiffs owned no interest and enriched themselves unjustly at the expense of the Plaintiffs.

## AS AND FOR A FOURTH DERIVATIVE CAUSE OF ACTION ON BEHALF OF 37 PCA
### (Accounting as to Defendant WRE)

291. Plaintiffs repeat and reassert each of the foregoing allegations as if set forth in their entirety.

292. WRE is the manager of MCI.

293. Plaintiff 37 PCA is a member of MCI.

294. Under the terms of the operating agreement and/or the New York Limited Liability Company Act, Plaintiff 37 PCA is entitled to examine the books and records of MCI.

295. Under New York common law, Plaintiff 37 PCA is entitled to an accounting for MCI.

296. Plaintiff 37 PCA demanded that WRE provide an opportunity to examine the books and records of MCI.

297. Plaintiff 37 PCA demanded that WRE provide an accounting for MCI.

298. WRE refused to provide 37 PCA an opportunity to examine the books and records of MCI.

299. WRE refused to provide an accounting for MCI.

300. Accordingly, 37 PCA is entitled to a court-mandated examination of the books and records of MCI and an accounting by the manager WRE for MCI.

## JURY DEMAND

301. Derivative Plaintiffs demand trial by jury as to all issues so triable.

WHEREFORE, Derivative Plaintiffs demand judgment against the Defendants as follows:

    i. Compensatory damages in an amount to be determined at trial but in any event not less than $1,500,000.00;

j.   Punitive damages in an amount to be determined at trial;

k.   Attorneys' fees and costs under such provisions of law as include without limitation N.Y. Bus. Corp. Law § 626;

l.   Declaratory relief in the form of an order and judgment declaring that Plaintiff My Capital Investment LLC is the lawful owner of the Property, that Plaintiff 37 Parsons Capital Advisors LLC is the 99.99% member of My Capital Investment LLC, and that Plaintiff 165 Gregory Road Associates LLC owns a portion of 37 Parsons Capital Advisors LLC proportionate to its capital investment and is entitled to a proportionate share of 37 Parsons Capital Advisors LLC's profits;

m.   An accounting by WRE for MCI;

n.   An examination of the books and records of MCI;

o.   Interest; and

p.   Such other and further relief as the Court deems just, proper, and equitable.

Dated: Chester, New York
        July 3, 2019

COHEN, LABARBERA & LANDRIGAN, LLP


  /s/Kyle A. Seiss_____
Kyle A. Seiss, Esq.
99 Brookside Avenue
Chester, New York 10918
Tel: (845) 291-1900
Fax: (845) 291-8601
Email: kseiss@cll-law.com
*Attorneys for Plaintiffs*