```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  JAMES CHOI and 165 GREGORY ROAD         :
  ASSOCIATES, LLC, et al.,                :
                                          :   MEMORANDUM DECISION AND
                                          :   ORDER
                       Plaintiffs,        :
                                          :   19-cv-3875 (BMC)
           - against -                    :
                                          :
                                          :
                                          :
  37 PARSONS REALTY LLC, et al.,          :
                                          :
                       Defendants.        :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

It is settled law that a court may deny a motion for a default judgment if it determines *sua sponte* that the complaint fails to state a claim. The issue before me is whether that determination in the default context is discretionary or mandatory. I hold that when considering a motion for a default judgment in which the defendants have not appeared (sometimes defendants appear after the clerk has entered their default), the court is allowed, but not required, to consider whether the complaint states a claim, and the motion for a default judgment should only be denied if the pleading is clearly insufficient.

Because the pleading at issue on the instant motion for a default judgment arguably states a claim, I am sustaining plaintiffs' objection to a Report and Recommendation that would deny their motion for a default judgment under RICO.

## BACKGROUND

Plaintiffs brought this RICO action with supplemental state law claims against a number of defendants alleged to have been involved in a real estate swindle. The alleged mastermind of

the swindle was defendant Antonio Wong. Plaintiffs allege that Wong, together with his controlled entity, Wong Real Estate Consultancy LLC ("WRE"), and individual defendants Yan S. Fok, and Ming Yi Cheung (together with Wong and WRE, the "Wong enterprise" or "Wong defendants") constituted a RICO enterprise by engaging in a years-long, ongoing real estate fraud. Wong would solicit investors with false statements of his experience as a real estate developer and various real estate opportunities – some fictitious and some real – but investors never ended up with any interest, even in the real estate projects that were real, as the Wong enterprise stole their interest.

The Wong enterprise had two *modi operandi*. In some instances, Wong would create fictitious investment opportunities, induce investors to send funds to WRE or some controlled special purpose vehicle, and then drain the funds for himself and varying accomplices. Alternatively, as in the present case, Wong would approach existing, legitimate projects and co-opt them into accepting a portion of investor funds that Wong had fraudulently obtained from investors, returning the substantial remainder of the funds to Wong, and giving Wong's SPV, not the investors, an interest in the development. The individual defendants served as "straw men" for the fraudulent investments so that Wong's name never had to be on any of the project documents.

Plaintiffs were one group of defrauded investors who thought they were investing $500,000 in a development project in Flushing, Queens. Plaintiffs' investment was structured as a capital contribution to 37 Parsons Capital Advisors ("37 PCA"), with the Wong defendants also serving as members. Plaintiffs understood that 37 PCA would then purchase My Capital Investment LLC ("MCI"), which already had a deal to purchase the development. When it became clear that their investment was gone, plaintiffs sued not only Wong but the law firm and

its principal (collectively, the "Lau defendants"), acting as escrow agent, which, at Wong's direction, had released plaintiffs' funds to 37 PCA.  37 PCA never took title to the development, and the bulk of the funds was wired out to the Wong enterprise.  The legitimate investment vehicle – 37 Parsons Realty LLC ("37 PR") – declined to acknowledge plaintiffs as investors in its project, let alone investors of $500,000, and therefore also found itself as a defendant.

I dismissed the Lau defendants on motion, see Choi v. 37 Parsons Realty LLC, 444 F. Supp. 3d 411 (E.D.N.Y. 2020) ("Choi I"), Choi v. 37 Parsons Realty LLC, No. 19-cv-3875, 2021 WL 2827313 (E.D.N.Y. July 7, 2021) ("Choi II"), and plaintiffs settled with 37 PR.  All members of the Wong enterprise remain in default[1] (rumor has it that Wong fled to China with his ill-gotten funds), and I referred plaintiffs' motion for a default judgment to Magistrate Judge Robert M. Levy for a Report and Recommendation.

Judge Levy rendered one of his usual thorough and scholarly R&Rs regarding the motion.  He started with the basic proposition that a motion for a default judgment "does not admit mere conclusions of law," citing, Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05-cv-1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007).  For that reason, he took on the task of determining whether the allegations in plaintiffs' complaint were sufficient to establish liability.  In a lengthy R&R, he held that plaintiffs had failed to allege a plausible RICO claim, and so recommended dismissal of that claim.  Judge Levy also found that plaintiffs had properly pled a breach of contract claim, and that, on that claim, plaintiffs were entitled to damages in the amount of $500,000 – the amount they had invested with the

---

[1] On November 16, 2021, defendant Fok filed a motion requesting leave to file a motion to vacate the entry of default.  The Court granted the request, but Fok never filed a motion to vacate.

Wong defendants on this project – plus interest. He recommended dismissal of the remaining state law claims as duplicative of the breach of contract claim.

## DISCUSSION

Plaintiffs have objected to that portion of the R&R recommending dismissal of the RICO claims on two grounds.

### I. Law of the Case

One of plaintiffs' arguments is that the law of the case has already established that they have stated a valid RICO claim. Plaintiffs rely on statements in an earlier decision I wrote in the case, denying the motion to dismiss of 37 PR, in which I stated, "The parties agree that defendant [Antonio] Wong, together with his company, . . . both of whom have defaulted, was operating a RICO enterprise," and "[37 PR] does not contest that Wong was running a RICO enterprise and that all the elements of the scheme are satisfied as to Wong. It concedes that Wong committed the required predicate acts." Choi II at *3.

Plaintiffs also rely on a discussion I had with the lawyer for 37 PR at the final pretrial conference:

> THE COURT: Mr. Chang, you can tell me if you're contesting that Antonio Wong ran a RICO scheme, but you didn't on summary judgment, so are you going to make the plaintiffs prove that there was such a RICO scheme, or are we going to work something reasonable out so that the jury is advised of it and teed up for the real issue here, which is did 37 Parsons knowingly participate in it.
>
> MR. CHANG: Judge, absolutely not.
>
> THE COURT: Okay. Absolutely not what? I'm sorry.
>
> MR. CHANG: I'm not contesting that Wong is innocent, no. It's – the issue is, as you pointed out, it's whether 37 Parsons was a participant in the conspiracy.
>
> THE COURT: So you two sides have to sit down and work out the necessary stipulations. I'm not saying the plaintiff can't call any witnesses on that to give it some color, I understand that[.] [Y]ou want to impress the jury that it was a real

RICO scheme and you can't necessarily do that based solely on written stipulations, but I think the case can be greatly simplified from the way you've presented it in the joint pretrial order. So please try to do that. Okay?

Like other preclusion doctrines, the purpose of the law of the case doctrine is to prevent courts from having to make the same decision twice. See generally Rezzonico v. H & R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999); Chan Ah Wah v. HSBC N. Am. Holdings Inc., No. 15-cv-8974, 2019 WL 859042, at *4 (S.D.N.Y. Feb. 22, 2019) (the law of the case doctrine is "driven by considerations" that include "judicial economy"); Weitzman v. Stein, 908 F. Supp. 187, 193 (S.D.N.Y. 1995) (the "law-of-the-case doctrine promotes judicial economy by permitting a court to refuse to revisit an issue that the court already has decided"). Law of the case "is a discretionary doctrine, and its application within a case depends, in part, on the context in which the court made its first ruling." Pinyuk v. CBE Group, Inc., 561 F. Supp. 3d 334, 338 (E.D.N.Y. 2021) (citing Virgin Atl. Airways, Ltd. v. National Mediation Board, 956 F.2d 1245, 1255 ("The law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.")). "[T]he doctrine 'does not rigidly bind a court to its former decisions, but is only addressed to its good sense.'" Colvin v. Keen, 900 F.3d 63, 68 (2d Cir. 2018) (quoting Zdanok v. Glidden Co., 327 F.2d 944, 952-53 (2d Cir. 1964)).

Neither the discussion I had with the lawyer for 37 PR at the pretrial conference nor my decision in Choi II is sufficient to constitute law of the case. They show the same thing: defendant 37 PR conceded the existence of the RICO scheme, and I therefore had no reason to determine whether plaintiffs had pled a plausible claim.[2] That was the position that 37 PR

---

[2] The closest I came to determining the adequacy of the RICO claims as a matter of pleading was when the Lau defendants argued both that the plaintiffs had failed to state a RICO claim, and, alternatively, even if they had,

5

maintained throughout this case; it never challenged whether plaintiffs had adequately pled a RICO claim. It moved for summary judgment against the claims, but in doing so, its argument was that plaintiff had produced insufficient evidence as to whether 37 PR was a part of the RICO scheme, an argument as to which I found factual issues in dispute. See Choi II at *4. Since it was unnecessary for me to determine the adequacy of plaintiffs' pleading, none of the prior rulings or statements upon which plaintiffs rely in their objection constitute law of the case.[3]

## II.  Adequacy of the RICO Claims

Plaintiffs' second objection to the R&R is that they did, in fact, adequately plead a RICO claim. Judge Levy held that plaintiffs "fail[ed] to establish both the enterprise and pattern elements of a RICO violation." As to the former, he determined that plaintiffs had failed to allege facts on the group's organization and the allegations therefore did not add up to the existence of a distinct entity. As to RICO's pattern requirement, he found that although plaintiffs had alleged a series of specific predicate acts showing a pattern, those allegations were not specific enough, as they "identif[y] the alleged victims but not the actors, other than Wong." He ruled that

> the supposed predicate acts of mail and wire fraud seem to consist mainly of persuading victims to wire money into escrow accounts and then absconding with it, but the complaint does not specify who did this persuading or absconding and by what means. Nor does the complaint state with specificity the content and details of the fraudulent communications or explain why the alleged statements were fraudulent when made.

---

plaintiffs had not sufficiently alleged the Lau defendants' involvement in that scheme. I granted the Lau defendants' motion to dismiss on their alternative theory, and therefore did not reach their initial argument. See Choi I at 422.

[3] Even if the prior ruling or statement upon which plaintiffs rely implicitly validated the RICO pleading – and I think they did not – I would exercise my discretion to disregard that implication in the present context. That is because I had no intention to issue a decision on the adequacy vel non of the RICO pleading; I was simply ruling on that which was before me.

Plaintiffs' objection challenges these holdings. As to the existence of an enterprise, they argue that they have pled that Wong and his named co-conspirators were an association-in-fact with one purpose: "to swindle Plaintiff Choi and others like him out [of] hundreds of thousands of dollars through fraudulent real estate investment opportunities and other real estate-related fraud." Plaintiffs further argue that they alleged relationships between the members of the enterprise: the allegations are that Wong was the mastermind and the other Wong defendants bought equity interests at Wong's direction in their own names so that Wong's fingerprints were not on the fraud. Plaintiffs point out that WRE rented an office at One World Trade Center to create the appearance of legitimacy and to collect money for the benefit of the enterprise. Plaintiffs also allege that Fok and Cheung received equity interests in 37 PR and 37 PCA so that Wong could get the benefit of defrauding plaintiffs without having Wong's name appear as one of the members.

As to a pattern, plaintiffs object that the R&R "fail[ed] to consider the detailed allegations in the verified pleadings" of other victims of the Wong defendants, and that other investors had sued in other cases involving similar frauds. In their motion for a default judgment, plaintiffs had gone beyond their complaint, relying on documentary evidence submitted by affidavit in other actions against the Wong enterprise to show a pattern. Plaintiffs pointed out that there were at least two other actions brought by investors against Wong and various conspirators alleging the same or similar methodology for committing a fraud on those investors.

In determining whether to sustain plaintiffs' objection on the merits, there is a threshold issue that is rarely, if ever, raised: on a motion for a default judgment, where the defendant has not appeared, is it mandatory for the court to first determine whether the plaintiff has pled a

plausible claim? The answer to this question is almost always assumed to be in the affirmative. But I don't think an affirmative answer should be so readily assumed, and examination of the complaint for plausibility should be the exception rather than the rule.

To look at the court's power and obligation *sua sponte* in the default context, it is helpful to assess that power and obligation in the non-default context. In the non-default context, a court may *sua sponte* dismiss a complaint if it finds that the complaint fails to state a claim, even if the plaintiff has paid the filing fee. See Webster v. Penzetta, 458 F. App'x 23, 25 (2d Cir. 2012); Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). As the Seventh Circuit noted in Hoskins v. Poelstra, 320 F.3d 761, 763 (7th Cir. 2003), whether to dismiss claims *sua sponte* is a decision committed to the sound discretion of the district court:

> District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense. This is so even when the plaintiff has paid all fees for filing and service . . . . But when exercising discretion to review complaints, judges must take care that initial impressions, and the lack of an adversarial presentation, not lead to precipitate action that backfires and increases the duration and cost of the case.

(Citation omitted).

The Second Circuit has recognized that a district court has the "ability *sua sponte* to dismiss a complaint" if the allegations "lack[] a basis in law or fact." Muka v. Murphy, 358 F. App'x 239, 241 (2d Cir. 2009); see also Chodkowski v. Cnty. of Nassau, No. 16-cv-5770, 2017 WL 10637956, at *13 (E.D.N.Y. Nov. 30, 2017) ("The Court has the authority under Rule 12(b)(6) to dismiss a complaint *sua sponte* for failure to state a claim upon which relief may be granted if the complaint lacks an arguable basis either in law or fact." (internal quotations and citation omitted)). As a practical matter, the vast majority of *sua sponte* dismissals are for frivolous claims, or, at least, where there is no substantial question as to whether the plaintiff can

prevail. See Citadel Mgmt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 146 (S.D.N.Y.2000) ("[T]he Court has discretion to dismiss claims *sua sponte* pursuant to Rule 12(b)(6), particularly where it is clear that a plaintiff could not have prevailed on the facts as alleged in the complaint."); compare Wachtler v. County of Herkimer, 35 F.3d 77, 82 (2d Cir. 1994) (affirming *sua sponte* dismissal of litigant's claim where the defendant-judge was protected by absolute immunity) with Thomas v. Scully, 943 F.2d 259, 260 (2d Cir. 1991) (reversing *sua sponte* dismissal of complaint without notice where complaint was not frivolous).[4]

Returning to the default context, the Second Circuit has expressly left the determination of whether to assess the complaint *sua sponte* to the discretion of the court. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir. 2015) ("The decision whether to enter default judgment is committed to the district court's discretion."); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action.").[5]

Although the Court of Appeals has not defined the parameters for the exercise of that discretion, it is logical to apply the same standard that applies to a court's determination of whether to dismiss a complaint *sua sponte* at the outset of a case. That is, the default judgment motion should be denied and the complaint dismissed if it is frivolous, or, at least, if it is clear

---

[4] Unlike many of the cases in this area, the instant case has no issue as to notice. Plaintiffs' memorandum of law in support of the motion for a default judgment argued that they had pled an adequate claim under RICO.

[5] The case cited for the contrary position in the R&R, Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009), does not make close review of the complaint in the default judgment context mandatory. It simply affirmed a decision in which a Magistrate Judge had exercised his discretion to deny a motion for default judgment. Even there, the defect was not that the complaint failed to use enough words to state a claim – the complaint was quite complete. Rather, the problem was that plaintiff's legal theory failed as a matter of law. That is quite different than determining whether the level of detail in a complaint is sufficient under Rule 9(b), Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

9

that the plaintiff could not prevail as a matter of law.  See, e.g., Associated Produce, Inc. v. LaSejita Produce, Inc., No. 19-cv-5894, 2020 WL 2475620, at *1 (E.D.N.Y. May 13, 2020) (adopting R&R denying motion for default judgment where plaintiff's complaint did not include "any allegations whatsoever regarding" an element of the cause of action).  There is no persuasive reason for applying a different standard to that which, in both instances, is a court's review *sua sponte* of the complaint's adequacy.

Despite the discretionary nature of the undertaking, most courts, at least in this large district, continue to treat the plausibility of the complaint as a mandatory or automatic first step in the evaluation of a motion for a default judgment.  Moreover, the standard usually applied to that determination is whether the complaint would survive a motion to dismiss under Rule 12(b)(6).  And that standard is applied with the same rigor as if it was a contested matter with an actual defendant raising the issue.

I don't think that's the right way to approach a motion for a default judgment.  No doubt, in strictly applying Rule 8(a), Rule 9(b) (if applicable), or Rule 12(b)(6), a judge can do at least as good a job and probably a better one as compared to counsel for a defendant if that defendant had appeared.  But it seems inappropriate for a court to take on the role of counsel for a defendant when the defendant itself has chosen not to appear.  As Judge Korman has noted in the default context, "[t]here is something wrong when a case or controversy, to the extent that it exists, is principally between a plaintiff and the judge[] deciding the case." Greathouse, 784 F.3d at 119 (Korman, D. J., concurring in part and dissenting in part).

There are also practical problems when a court assumes that role.  In the non-default context, a court dismissing a complaint *sua sponte* as inadequately pled must, unless the complaint is frivolous or meritless as a matter of law, give the plaintiff leave to amend.  See e.g.,

Perez v. Ortiz, 849 F.2d 793, 798 (2d Cir. 1988) (abuse of discretion "to [*sua sponte*] dismiss the suits against the police officers in their official capacities without giving the plaintiffs an opportunity to amend to conform to the requirements of an official capacity suit.").

But granting leave to amend in the default judgment context would be like trying to fit a square peg in a round hole. If the complaint has to be amended, then it has to be re-served on the defaulting defendant, and the case is inevitably delayed. Moreover, if the defendant defaults again, as would usually be the case, then the court has to take on an even larger defense counsel role by evaluating the amended complaint with the same detailed analysis it applied to the first complaint. That furthers the appearance that the court is litigating the case on behalf of a defendant who doesn't care enough to do it himself.

In addition, as this case shows, parties frequently choose not to make a Rule 12(b)(6) motion. 37 PR never did. Defendants often determine that moving against a complaint under Rule 12(b)(6) is not an effective use of resources, as the plaintiff will likely be given leave to amend, and any insufficiency can be raised on summary judgment together with an examination of the merits. See Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (summary judgment must be granted if "no rational finder of fact 'could find in favor of the nonmoving party"). And if a non-appearing defendant might not have made the preliminary motion, it does not seem to me that the court should readily take on that obligation. See Lewis v. New York, 547 F.2d 4, 6 (2d Cir. 1976) ("It is prudent for judges to avoid an inquisitorial role, and not search out issues more appropriately left to a motion by the opposing party.").

Furthermore, at least in a multi-defendant case like this one, where some defendants appear and some do not, there is a reliance consideration. Plaintiffs have been aggressively litigating this case against the Lau defendants and 37 PR for years. No court has suggested to

11

them that the complaint didn't allege quite enough facts to make out an enterprise or pattern until now, when the case is all but over. Although the Wong defendants defaulted at the outset of the case, and, at plaintiffs' request, the Clerk of Court entered their default under Rule 55(a), plaintiffs had no power to obtain a default judgment against them and proceed to execution. This is because the claims against the Wong defendants are intertwined with those against the appearing defendants. Thus, no separate judgment was available under Fed. R. Civ. P. 54(b). See Frow v. de la Vega, 82 U.S. 552, 554 (1872) (courts should not enter separate judgments against defaulting defendants but should wait until the claims against the other defendants are resolved); Allstate Ins. Co. v. Baturov, 544 F. Supp. 3d 264, 267 (E.D.N.Y. 2021) ("District courts generally resolve all claims against non-defaulting defendants before entering a default judgment against defaulting defendants because of the risk of inconsistent judgments.").

There is yet another reason that bespeaks caution before conducting a detailed analysis of the complaint in the default judgment context. On some motions for a default judgment, to demonstrate damages but also to buttress complex claims of liability, plaintiffs will submit affidavits and documentary evidence on the motion that expand upon the allegations in the complaint. That is certainly the case here, as plaintiffs submitted over 60 exhibits, many of which amplify and go beyond the allegations in the complaint, to show that the Wong defendants were running an open-ended RICO enterprise by engaging in a pattern of racketeering activity that involved other investors in other real estate development deals. Although such evidence could be considered on a Rule 12(b)(6) motion to help determine whether to grant leave to amend, much of it could not be considered on a motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (district court erred in considering "extraneous material" in ruling on motion to dismiss that was not incorporated by reference in the complaint

12

or "relie[d] heavily upon [for] its terms and effect"). Yet that evidence is highly probative in determining whether there really was an enterprise engaging in a pattern of racketeering activity. I see no reason why such affidavits should not be considered on a motion for a default judgment, yet in this case, it is not clear whether the R&R, in conducting a Rule 12(b)(6) analysis of the complaint, did so.

Finally, I note that the common practice in this district of conducting a detailed analysis of the adequacy of a complaint before granting a default judgment motion requires the commitment of a substantial amount of judicial resources. The body of case law undertaking that level of inquiry, just from this district, is extensive. See e.g., J & J Sports Prods., Inc. v. Ferreiras, No. 15-cv-6546, 2020 WL 2553265, at *3 (E.D.N.Y. May 20, 2020) (sustaining objection to R&R and holding that plaintiff adequately stated a claim to support entry of default judgment); Chung v. Sano, No. 10-cv-2301, 2011 WL 1298891, at *9 (E.D.N.Y. March 31, 2011) (adopting R&R denying motion for default judgement for failure to state a claim, but allowing leave to amend and re-serve). Whether decided by District Judges or recommended by Magistrate Judges, final disposition on a motion for a default judgment using the typical procedure can take many months or even longer, as it did in this case. See e.g., SAC Fund II 0826, LLC v. Burnell's Enterprs., Inc., No. 18-cv-3504, 2019 WL 5956526, at *1 (E.D.N.Y. Nov. 13, 2019) (motion for default judgment filed October 10, 2018, R&R denying motion for default on certain issues decided on September 7, 2019, and district court decision allowing leave for plaintiffs to replead claims issued November 13, 2019). The effort to generate and review Reports and Recommendations going into that level of detail, in my view, would usually be better spent addressing matters where there is actually a contest between the parties.

This is not to suggest that courts should reflexively gloss over the question of the adequacy of a complaint on a motion for a default judgment any more than they should reflexively delve into it. A complaint deficient enough to warrant dismissal *sua sponte* won't take a lot of time or careful analysis to see that. If a complaint is frivolous, or if it is plainly barred by judicial immunity or some other preclusive doctrine, then the motion for a default judgment should not be granted.[6]

That is far from the case here. The defaulting defendants are not entitled to the benefit of the doubt because, well, they have defaulted. Although I might or might not have agreed with the R&R in the context of a contested Rule 12(b)(6) motion, it is unnecessary to consider the complaint at that level. Upon review of plaintiffs' motion, complaint, and particularly the exhibits submitted with the motion, I have little doubt that the Wong defendants were a racketeering enterprise engaged in a pattern of racketeering activity. Whether the complaint adequately set that forth is a question that does not need to be determined.

## CONCLUSION

Plaintiffs' objection to the R&R is sustained. The Court adopts that portion of the R&R that recommended judgment for breach of contract in the amount of $500,000 plus interest, and rejects that portion recommending against judgment on the RICO claims. The Clerk is directed to enter judgment in favor of plaintiffs for $500,000 plus prejudgment interest of 9% from December 1, 2015, against defendants Antonio Wong, Wong Real Estate Consultancy LLC, Yan

---

[6] I need not determine whether a court should be considering the many affirmative defenses that a defendant could have waived had it appeared, *e.g.*, statute of limitations, and thus arguably did waive by not appearing. I have suggested in a prior decision, where an R&R recommended denial of a motion for a default judgment for lack of personal jurisdiction, that a standard similar to the one I am employing here, *i.e.*, clear absence of personal jurisdiction, should be applied. See Kaplan v. Hezbollah, No. 19-cv-3187, 2022 WL 2207263, at *2 (E.D.N.Y. June 21, 2022).

S. Fok, and Ming Yi Cheung, and $1.5 million on plaintiffs' RICO claims, inclusive of the $500,000 on their breach of contract claim. Plaintiffs may move for attorneys' fees consistent with the procedures in Federal Rule of Civil Procedure 54(d).

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
November 21, 2022